## CHICAGO, ST. P., M. & O. RY. CO. v. RORVIG.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1914.)

### No. 4116.

1. CARRIERS (§ 320*)—INJURIES TO PASSENGERS—DEPOT PLATFORM—OBSTRUCTIONS—ICE—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a passenger by falling on a ridge of ice on defendant's depot platform as the passenger was passing to his train, whether the ice formed on the platform on the day of the accident, or had negligently been permitted to remain for one or more days prior to the accident, *held* for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

2. EVIDENCE (§ 359*)—PHOTOGRAPHS—CHANGED SITUATION.

Where, immediately after plaintiff had fallen on a ridge of ice on defendant's depot platform, the ice was covered with salt, which removed it, and there was no controversy as to the other relative locations as disclosed by the evidence, photographs of the platform, etc., taken two or three days after the accident, were properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1509–1512; Dec. Dig. § 359.*]

In Error to the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action by Bjorn Rorvig against the Chicago, St. Paul, Minneapolis & Omaha Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George W. Peterson, of St. Paul, Minn., for plaintiff in error.

Hammond & Farmer, of St. James, Minn., and S. B. Wilson, of Mankato, Minn., for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

SANBORN, Circuit Judge. The railway company, the defendant below, complains of a judgment against it for alleged negligence in

its failure to remove an accumulation of ice from its platform at Madelia, Minn., which the plaintiff alleged caused him to fall and to break his hip as he was walking across the platform of the station to enter one of defendant's trains at about noon on January 16, 1912. The refusal of the court below to instruct the jury to return a verdict for the defendant at the close of the evidence, and its refusal to receive in evidence two photographs of the place of the accident taken two days thereafter, are specified as errors.

These facts were admitted or proved beyond dispute when the evidence was closed: The railroad of the defendant extended east and west past the station at Madelia, which was on the north side of the railroad. On the south side of the station building was a bay window, and a platform between the station building and the track. Under the eaves of the sloped roof over this bay window there was, at the time of the accident, an accumulation of ice, upon which there was a light covering of snow. Plaintiff's witnesses testified that this accumulation was a rough ridge sloping north and south from 1½ inches to 3 inches thick, about 4 feet wide and 8 feet long. Defendant's witnesses testified that it was from one-half inch to an inch thick, 6 inches wide, and 6 feet long. The weather was cold on the day of the accident, and for 10 days before. The maximum temperature on that day was 15 degrees above zero, and the minimum temperature 24 degrees below zero. The mean maximum temperature for the first 16 days of January at New Ulm, 15 miles north Madelia, was 7.75 degrees below zero, and the mean minimum temperature was 21.6 degrees below zero. The plaintiff purchased a ticket from Madelia to St. James from the defendant and started to enter his train, which had arrived, when, as he was walking towards it, he stepped on the ice, fell, and was injured. After the accident one of the employés of the defendant put salt on the ice, and it was gone before the night of January 16, 1912.

The court charged the jury that, if the ice accumulated on the day of the accident, they must return a verdict for the defendant, but that, if it had been on the platform so long prior to that day that the defendant knew, or ought to have known, of its presence, and if it was so rough and dangerous to passengers that persons of ordinary prudence in its situation would have removed it, and the defendant either knew, or ought to have known, its character and location before the day of the accident, they might return a verdict for the plaintiff, if they were of the opinion that the defendant failed to exercise ordinary care to prevent injury to its passengers by the accumulation of the ice. This charge of the court is not challenged.

[1] "The position of the defendant," writes counsel for the railway company in his brief, "is that plaintiff slipped on newly made ice, which had formed on the day of the accident by drippings from the eaves of the station building, which froze on striking the brick platform, forming a slight ridge of slippery ice." But the question whether the ice was newly made on that day, or had been on the platform for many days, was the clear issue during the trial, which the jury decided against the company. Unless, at the close of the trial, the evi-

dence in support of that conclusion was so insubstantial that it was the duty of the court, after the verdict, to set aside the conclusion for want of substantial evidence to sustain it, there was no error in its refusal to direct a verdict for the defendant. To avoid a useless discussion in detail of the evidence for the plaintiff, it is conceded in the discussion of this case that the weight of the evidence was that the platform was cleared by the defendant's employés on the morning of January 16, 1912, before the accident, and on the evening of January 17, 1912; that there was no ice on the platform at either of these times, or for days before; and that the ice on which the plaintiff fell was formed by drippings from the eaves on the morning of January 16, 1912.

Notwithstanding this concession, the record discloses the fact that Mr. Beaman testified that he was the clerk of the hotel at Madelia at the time of the accident, that he took the mail from the train in the night every night to the hotel on a cart on runners or on a sled, that there was a rough ridge of ice on the platform under the eaves of the station building an inch and a half thick, 3 feet wide, and 12 feet long during at least four nights just preceding the accident, that he knew this because he saw it and drew his sled over it each night, that he took the sled over the ice, because it ran more easily there than over the other parts of the platform that were free from ice, that this ice was in the same condition during the four nights just preceding the accident, and that it was gone after the accident. The record also discloses the fact that Mr. Playfair testified that at the time of the accident he was the village marshal of Madelia, that it was a part of his duty to go to the railroad station every day, and he did so, that he was on duty from 1 o'clock in the afternoon until 3 o'clock in the morning each day, that he was accustomed to help Mr. Beaman, the night clerk at the hotel, to draw his mail across the platform, that they ran the sled or sleigh over the ice because it would run easy there, that at the time of the accident and for a week or ten days before that time there was a rough ridge of ice under the eaves of the roof on the station platform an inch and a half thick and 8 or 10 feet long.

The testimony of these two witnesses was too clear, positive, and circumstantial to be disregarded by the trial court. It presented substantial evidence in support of the finding of the jury, and a conflict of evidence on a material issue of fact, upon which the plaintiff had the legal right to their verdict, and there was no error in the refusal of the court to take the case from the jury.

[2] After the situation of the railroad, the station building, the platform, and other relative locations about which there was no controversy had been disclosed by the evidence, and the undisputed fact that the ice on the platform on the day of the accident had been removed on that day after the accident by the use of salt had been proved, the defendant offered in evidence two photographs of the railroad, platform, and the station building, taken two or three days after the accident, and evidence that the condition of the platform was the same at the time the photographs were taken that it was at the time of the accident, except that the salt had caused the ice to disappear, and the court rejected this evidence. There was certainly no error in this

ruling, because when this offer was made the only material issues in the case were the amount and condition of the ice on which the plaintiff fell and the length of time it remained on the platform, and the offered evidence was neither relevant nor material to any of these issues.

There was no error in the trial of this case, and the judgment below is affirmed.